1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   TASHION WILLIAMS,

12                    Petitioner,

13

14            v.

15

16   S J RYAN, Warden, et al.

17                            Respondents.

18

19

| | |
|---|---|
| Case No. 04cv2596-J (AJB) | |

**ORDER:**

**(1) ADOPTING R&R;**

**(2) DENYING PETITIONER'S SECTION 2254 PETITION FOR WRIT OF HABEAS CORPUS;**

**(3) DENYING PETITIONER'S MOTION TO AMEND; and**

**(4) DENYING PETITIONER'S MOTION FOR STAY AND ABEYANCE**

20        Before the Court is Petitioner Tashion William's ("Petitioner") Petition for Writ of

21   Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  [Doc. No. 1.]  Magistrate Judge

22   Anthony J. Battaglia has filed a Report and Recommendation ("R&R") advising this Court to

23   deny Petitioner's Petition.  [Doc. No. 16.]  Petitioner has filed Objections to the R&R.  [Doc.

24   No. 24.]  After a supplemental briefing schedule set by this Court, Petitioner filed a Motion

25   to Amend his Petition and a Motion for a Stay and Abeyance.  [Doc. Nos. 27, 35.]  The

26   Government has filed an Opposition to that Motion.  [Doc. No. 30.]  For the reasons set forth

27   below, this Court (1) **ADOPTS** the R&R, (2) **DENIES** Petitioner's Petition for Writ of Habeas

28   Corpus, (3) **DENIES** Petitioner's Motion to Amend, and (4) **DENIES** Petitioner's Motion for

1    a Stay and Abeyance.

2

3                          ***Background***

4          On December 10, 1995, Eddie Hamilton was stabbed to death.  (*See* Gov't's Lodg't No.

5    5 at 3.)  After the homicide, police recovered a knife from Petitioner's residence, but Petitioner

6    was not charged with a crime.  (*See id.* at 2-3.)

7          Four years later, on November 30, 1999, Petitioner was arrested on misdemeanor

8    warrants, and police officers interviewed him ("first interview") about the murder of Mr.

9    Hamilton.  (*See* Govt's Lodg't No. 5 at 4.)  After waiving his *Miranda* rights, Petitioner denied

10   responsibility for the murder of Mr. Hamilton.  (*See id.*)  During the interview, Petitioner told

11   officers he would be discussing the misdemeanor warrants with his attorney.  (*See* Gov't's

12   Lodg't No. 2 at 17.)  At the end of the interview, Petitioner asked detectives whether there was

13   "anything I need to give my lawyer or tell my lawyer or anything like that, ah, you know." (*Id.*

14   at 57.)

15         Two months later, on January 27, 2000, police officers conducted another interview

16   with Petitioner regarding Mr. Hamilton's death ("second interview").  (*See* Govt's Lodg't No.

17   5 at 4.)  After waiving his *Miranda* rights, Petitioner admitted to stabbing Mr. Hamilton, but

18   claimed he acted in self-defense.  (*See id*; *see* Gov't's Lodg't No. 2 at 108.)  During the

19   interview, Petitioner mentioned that he had spoken with an attorney, stating, "Yeah, talked to

20   everybody in family [*sic*].  I talked to a lawyer about the whole thing because I, my mom's

21   friend, you know he's a lawyer, such fourth [*sic*] or whatever and . . ." (Gov't's Lodg't No. 2

     at 60.)

22         On February 9, 2001, a jury in the Superior Court of San Diego County found Petitioner

23   guilty of Mr. Hamilton's murder.  (*See* Gov't's Lodg't No. 12 at 559.) Petitioner was sentenced

24   to life in prison without the possibility of parole.  (*See* Gov't's Lodg't No. 5 at 5-6.)  Petitioner

25   appealed his conviction to the California Court of Appeal; that court affirmed the conviction.

26   (*See* Gov't's Lodg't No. 5.)  Petitioner then appealed to the California Supreme Court, which

27   denied his Petition for Review on March 26, 2003. (*See* Gov't's Lodg't No. 9.)

28         Almost a year later, on February 20, 2004, Petitioner filed a petition for writ of habeas

corpus in the California Supreme Court. (*See* Gov't's Lodg't No. 10.) In his state petition, Petitioner claimed his statement to police during the second interview should have been suppressed because it was obtained in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (*See* Gov't's Lodg't No. 10.) Petitioner also argued that he had received ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment. (*See id.*) On December 15, 2004, the California Supreme Court denied his petition without comment or citation. (*See* Gov't's Lodg't No. 11.)

On December 30, 2004, Petitioner filed his Petition in this Court. [Doc. No. 1.] Petitioner raised four grounds for relief: (1) Petitioner's statement to police during his second interview was obtained in violation of Petitioner's Sixth Amendment right to counsel and *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966); (2) Petitioner's statement to police during his second interview was involuntary and therefore obtained in violation of Petitioner's due process rights; (3) Petitioner received ineffective assistance of trial counsel in violation of the Sixth Amendment; and (4) Petitioner received ineffective assistance of appellate counsel also in violation of the Sixth Amendment. (*See* Pet'r's Pet. at 17-19.)

In the R&R, the Magistrate Judge concluded that Petitioner is not entitled to relief on any of the four grounds, and recommended that this Court deny the Petition. (*See* R&R at 1.) Thereafter, Petitioner filed Objections to the R&R, wherein he re-asserted all four grounds for relief. (*See* Pet'r's Objs. at 22-24.)

However, in his Objections, Petitioner asserted a ground in support of his claim of ineffective assistance of appellate counsel, which he had not included in either his federal Petition or his California Supreme Court petition. (*See id.* at 8-10; *see generally* Pet'r's Pet; Gov't's Lodg't No. 10.) Specifically, Petitioner asserted for the first time that "the trial court abused its discretion when it allowed the readback of transcripts and audio tapes of the defendant in the jury room without giving admonishments to cure any possible prejudice." (*See id*. at 8.) As a result, this Court set a briefing schedule to allow Petitioner an opportunity to request leave to amend his federal Petition and to request a stay and abeyance. (*See* Order Setting Brief. Sched. at 1-2.) In response, Petitioner filed a Motion to Amend the Petition and a Motion for a Stay and Abeyance. [Doc. No. 35.] The Government filed an Opposition.

[Doc. No. 30.]

### *Legal Standard*

The duties of the district court in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (2005).  The district court must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see United States v. Raddatz,* 447 U.S. 667, 676 (1980).  When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law.  *See Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974).  Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*." *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989) (citation omitted), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

### *Discussion*

In his federal Petition, Petitioner contends that the following constitutional rights were violated: (1) his Sixth Amendment right to counsel; (2) his Fifth Amendment right against self-incrimination and *Miranda*; (3) his Fourteenth Amendment right to due process; (4) his Sixth Amendment right to effective assistance of trial counsel; and (5) his Sixth Amendment right to effective assistance of appellate counsel.[1]  (*See* Pet'r's Pet. at 17-19.)  In the R&R, Magistrate Judge Battaglia concludes that Petitioner is not entitled to relief on any of these grounds.  (*See* R&R at 6-16.)  After a *de novo* review of the factual findings relevant to

---

[1] Petitioner presents four grounds for relief in his form Petition, but in his accompanying memorandum of points and authorities in support of his Petition, he raises the same arguments by grouping them into five claims. (*See* Pet'r's Pet. at 6-9; 22-24.)  Although the R&R refers to the four claims in Petitioner's form Petition, this Court will address all five claims in Petitioner's memorandum of points and authorities in support of his Petition.

Petitioner's objections, and a *de novo* review of the conclusions of law, this Court **ADOPTS** the R&R in its entirety, **DENIES** Petitioner's Motion to Amend, **DENIES** Petitioner's Motion for a Stay and Abeyance, and **DENIES** Petitioner's Petitioner for Writ of Habeas Corpus**.**

## I.  Sixth Amendment Right to Counsel

Petitioner contends that the statements he made during his second interview with police were obtained in violation of his Sixth Amendment right to counsel.  (*See* Pet'r's Pet. at 17-18.)  Petitioner asserts two arguments in support of his claim:  (1) the adversarial process began when "the citizen is read his/her Miranda rights" and, thus, he was entitled to counsel during this process; (2) and his arrest on misdemeanor charges prior to his first interview, created a right to counsel that attached to his second interview with police.  (*See id*.)  For the reasons set forth below, this Court **DENIES** both of these arguments for ineffective assistance of counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "[T]he 'core purpose' of the counsel guarantee is to assure aid at trial, 'when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.' " *United States v. Gouveia*, 467 U.S. 180, 188-89 (1984) (quoting *United States v. Ash*, 413 U.S. 300, 309 (1973)).

However, the Sixth Amendment right to counsel only attaches when "a prosecution is commenced, that is, at or after the initiation of adversary judicial proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001).  Furthermore, the "filing [of a] complaint for an arrest warrant [is] not a prosecutorial act [because] the complaint is functus officio on petitioner's arrest."  *Anderson v. Alameida*, 397 F.3d 1175, 1180 (9th Cir. 2005); *see also Gouveia,* 467 U.S. at 190 (finding that the right to counsel does not attach at the time of arrest).

Additionally the Sixth Amendment right to counsel is offense specific, with no "exception for crimes that are 'factually related' to a charged offense."  *Cobb,* 532 U.S. at 168. As to those "other crimes . . . to which the Sixth Amendment right has not yet attached,

[incriminating statements] are, of course, admissible at a trial on those offenses." *Maine v. Moulton,* 474 U.S. 159, 180 n.5 (1985); *see also McNeil v. Wisconsin,* 501 U.S. 171, 176 (1991).

In his first allegation, Petitioner contends that for purposes of Sixth Amendment adjudication, the "adversarial process is established the moment the citizen is read his/her *Miranda* rights." (Pet'r's Objs. at 2.) Therefore, Petitioner argues that once he was read his *Miranda* rights during his second interview with police, the Sixth Amendment requires that Petitioner's counsel be present for the remainder of the interview. (*See id*. at 3.) Petitioner argues his Sixth Amendment right was violated because he did not have counsel present for the remainder of the second interview. (*See id.*)

However, Petitioner's argument fails because the Sixth Amendment right to counsel is not established "the moment the citizen is read his/her Miranda rights." (*See* Pet'r's Objs. at 2.) Rather, the Sixth Amendment right only attaches when adversarial criminal judicial proceedings are commenced. *See Cobb,* 532 U.S. at 167-68. Prior to the second interview on January 27, 2000, no adversarial judicial proceedings concerning the murder had been initiated against Petitioner. Although a police officer filed a complaint and obtained a warrant for Petitioner's arrest on January 20, 2000, the issuance of the arrest warrant does not trigger Petitioner's right to counsel. (*See* Gov't's Lodg't at 13); *see Anderson,* 397 F.3d at 1180; *Gouveia,* 467 U.S. at 190. The adversarial proceeding did not begin until his arraignment on January 31, 2000, which was four days after his second interview. (*See* Gov't's Lodg't No. 1.) *See Cobb,* 532, U.S. at 167-168. Therefore, the Court **FINDS** that because adversarial proceedings had not been initiated against Petitioner at the time of his second interview, Petitioner had no Sixth Amendment right to counsel at the interview.

Petitioner next contends his Sixth Amendment right was violated because he had asked for counsel during the first interview and that right attached to the second interview. Specifically, Plaintiff alleges that he invoked his right to counsel by asking detectives at the end of the first interview, "anything I need to give my lawyer or tell my lawyer or anything like that, ah, you know." (*See* Gov't's Lodg't No. 2 at 57; Pet'r's Pet. at 27.) Petitioner argues that because he had invoked his right to counsel in the first interview, that right attached to his

- 6 -

second interview on January 27, 2000 and it was violated when he did not have counsel present.  (*See* Pet'r's Pet. at 22-24; *see also* Pet'r's Objs. at 3.)

This Court agrees with the Magistrate Judge's conclusion that Petitioner's right to counsel as to the murder charge did not attach merely because Petitioner referred to an attorney during the first interview.  (*See* R&R at 8.)  The right to counsel is "offense specific."  *See Cobb*, 532 U.S. at 168 ("a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses").  As the Magistrate Judge reasoned in the R&R, although the murder of Eddie Hamilton was discussed in the first interview, at the time of the interview, Petitioner had not been charged with or arrested for murder.  (R&R at 8.)  Therefore, even if adversarial proceedings had begun as to Petitioner's misdemeanor charges, Petitioner's right to counsel did not attach to the subsequent murder charge.  Thus, the Court **FINDS** that Petitioner's references to a lawyer during the first interview had no bearing on his Sixth Amendment right to counsel as to the murder case.

## II.  Fifth Amendment Right Against Self-Incrimination and *Miranda*

Petitioner also contends that the statements he made in the second interview were obtained in violation of his rights under the Fifth Amendment and *Miranda*.  (*See* Pet'r's Pet. at 27.)  Petitioner argues that he had invoked his *Miranda* rights during his first interview with police on November 30, 1999, which therefore prevented officers from questioning him when he did not have counsel present during his second interview on January 27, 2000.  (*See id.*)  For the reasons set forth below, this Court **FINDS** that police officers did not violate Petitioner's Fifth Amendment or *Miranda* rights.

A suspect who is subject to custodial interrogation must be advised of his or her federal constitutional right to remain silent and his or her right to have an attorney present during questioning.  *See Miranda*, 384 U.S. at 467-68.  A suspect who invokes his or her *Miranda* rights after arrest is not subject to further interrogation by the authorities until counsel has been made available, unless the accused (1) initiates further communication, exchanges, or conversations with police, and (2) knowingly and intelligently waives the right previously

1  invoked.  *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), *see also Shedelbower v.*

2  *Estelle*, 885 F.2d 570, 573 (9th Cir. 1989).  Furthermore, a suspect's invocation of the right

3  must be sufficiently unambiguous such that "a reasonable police officer in the circumstances

4  would understand the statement to be a request for an attorney."  *Davis v. United States*, 512

5  U.S. 452, 459 (1994).

6      This Court agrees with the Magistrate Judge's finding that in both interviews, Petitioner

7  waived his Miranda rights and never attempted to re-invoke those rights.  (*See* R&R at 10-11.)

8  During the first interview, Petitioner did not invoke his *Miranda* rights because he admits that

9  prior to commencement of the interview, he was advised his *Miranda* rights and "waived his

10  rights."  (*See* Pet'r's Pet. at 19.)  Petitioner did not subsequently reinvoke those rights because

11  merely mentioning to police that he would be discussing the details of the misdemeanor charge

12  with a lawyer does not constitute an unambiguous request for an attorney as to the murder

13  charge.  *See Davis*, 512 U.S. at 459 (holding that a "suspect must unambiguously request

14  counsel" to invoke his or her Miranda rights).  Further, at no point during the interview did

15  Petitioner indicate any desire to end questioning and speak with an attorney.  (*See* Gov't's

16  Lodg't No. 2 at 18-20, 57.)  Thus, Petitioner's statements in the first interview were not

17  obtained in violation of the Fifth Amendment or *Miranda*.

18      Petitioner also waived his *Miranda* rights at the beginning of his second interview and

19  never re-invoked those rights.  (*See* Gov't's Lodg't No. 2 at 60.)  According to the transcript

20  of that interview, after the interviewing officer advised Petitioner of his *Miranda* rights, the

21  officer asked Petitioner if he still wanted to talk to officers.  (*See id.*)  Petitioner answered,

22  "yeah."  (*See id.*)  During the interview Petitioner did reference an attorney at one point,

23  stating, "Yeah, talked to everybody in family [*sic*]. I talked to a lawyer about the whole thing

24  because, I, my mom's friend, you know he's a lawyer, such fourth [*sic*] or whatever." (*Id*. at

25  117.)  However, merely referencing an attorney cannot "reasonably be construed to be an

26  expression of a desire for the assistance of an attorney."  *McNeil v. Wisconsin*, 501 U.S. 171,

27  184 (1991).  Because Petitioner's statement does not constitute an unambiguous request for

28  an attorney or an intention to end questioning, Petitioner did not invoke his Fifth Amendment

or *Miranda* rights in the second interview.  *See Davis*, 512 U.S. at 459.

Because Petitioner admitted to waiving his *Miranda* rights at the outset of both the first and second interviews, and did not invoke his *Miranda* rights at any subsequent point in the interviews, this Court **FINDS** that Petitioner is not entitled to relief under the Fifth Amendment or *Miranda*.

## III.  Fourteenth Amendment Right to Due Process

Petitioner contends that his statements admitting to the stabbing of Mr. Hamilton in the second interview were involuntarily given and therefore were obtained in violation of his Fourteenth Amendment due process rights.  (*See* Pet'r's Pet. 29-31.)  In addition, in his Objections to the R&R, Petitioner contends that in his first interview, the detectives "coerce[d] and compell[ed]" Petitioner into making incriminating statements in violation of his due process rights.[2]  (*See* Pet'r's Objs. at 4-7.)  For the reasons set forth below, this Court **FINDS** that police officers constitutionally obtained the statements in both interviews.

The Due Process Clause of the Fourteenth Amendment provides that "[no State shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1, cl. 2.  In interpreting the Due Process Clause, the Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' "  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Furthermore, the Supreme Court "has made it clear that a confession is only involuntary   . . . if the police use coercive activity to undermine the suspect's ability to exercise free will."  *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990).

However, a high level of police coercion is necessary to render a confession

_____

[2] A federal court is permitted to deny a habeas claim that is not a colorable federal claim on the merits even if the petitioner failed to fully exhaust state judicial remedies.  *See* 28 U.S.C. § 2254(b) (1996) ("an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that a court may deny an unexhausted petition on the merits if the petitioner does not raise a colorable federal claim).  Because this Court **FINDS** that Petitioner did not make a colorable federal claim of coercion, this Court need not address whether Petitioner exhausted this particular claim in state court.

involuntary. *See, e.g., Mincey v. Arizona*, 437 U.S. 385, 401-02 (1978) (finding a confession involuntary where defendant, while hospitalized and sedated in intensive care, was interrogated for four hours); *Greenwald v. Wisconsin*, 390 U.S. 519, 520-21 (1968) (finding a confession involuntary where a medicated defendant was questioned for over eighteen hours and was deprived of food and sleep). Moreover, to determine the "voluntariness" of Petitioner's statement, a "finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect." *United States v. Wauneka*, 770 F.2d 1434, 1440 (9th Cir. 1985).

Further, the Supreme Court has held that the Due Process Clause does not require "sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State." *Connelly*, 479 U.S. at 166-67. Indeed, the Due Process Clause "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' " *Id.* at 170 (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)).

Contrary to Petitioner's claim that his statements in the second interview were made involuntarily, neither Petitioner nor the record provides any evidence of police coercion. (*See* Pet'r's Pet. at 25-26; *see generally* Gov't's Lodg't No. 2 at 77-78, 100-16.) At no point during the interview did the detectives threaten Petitioner. (*See generally* Gov't's Lodg't No. 2 at 77-78, 100-16.) Rather, as the Magistrate Judge noted in the R&R, the general tone of the interview was professional and non-confrontational. (*See id.*) Moreover, the transcript of the interview reveals that Petitioner remained in control of his responses. Thus, there is no indication that Petitioner's "ability to exercise free will" was ever compromised by police coercion. *See Derrick*, 924 F.2d at 8182.

Petitioner also erroneously argues that during the first interview, detectives capitalized on Petitioner's fear from having previously witnessed a police officer kill his cousin. (*See* Pet'r's Objs. at 7.) Petitioner's only support for this contention is that the officers utilized a serious tone during the interview, along with knowledge of his fear, in order to "coerce and compel" Petitioner into making incriminating statements. (*See id.*) However, Petitioner does

not argue, and the transcripts of the interview do not indicate, that the detectives even mentioned the death of Petitioner's cousin in the interview. (*See generally* Gov't's Lodg't No. 2 at 16-57.)  Because the Due Process Clause does not require "sweeping inquiries into the state of mind of a criminal defendant," the fear that Petitioner may have had as a result of witnessing his cousin's death is irrelevant in an assessment of whether his due process rights were violated.  *Connelly,* 479 U.S. at 166-67.  Further, there is no evidence that police used coercive activities such as deprivation of food or sleep, or medicating Petitioner prior to the first interview.  *See Derrick*, 924 F.2d at 818; *see also Mincey,* 437 U.S. at 401-02; *Greenwald,* 390 U.S. at 520-21.  Accordingly, this Court **FINDS** that Petitioner is not entitled to relief for his due process claim.

## IV.  Sixth Amendment Right to Effective Assistance of Trial Counsel

Petitioner claims he received ineffective assistance of trial counsel when his counsel failed to move to suppress Petitioner's statements during his second interview admitting to Mr. Hamilton's murder.  (*See* Pet'r's Pet. at 18, 24.)  Petitioner argues that his counsel should have suppressed those statements because they were obtained in violation of his Sixth Amendment right to counsel.  For the reasons set forth below, this Court **FINDS** that Petitioner is not entitled to relief on his claim of ineffective assistance of trial counsel.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 688 (1984), established the test courts use to analyze claims of ineffective assistance of counsel.  To prevail on such a claim, first, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*.  Second, defendant must also show "any deficiencies in counsel's performance [were] prejudicial to the defense."  *Id*. at 692.  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

The Court of Appeal for the Ninth Circuit has held that a failure to file a motion will not constitute ineffective assistance of counsel unless the trial court would have granted the

motion.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).  The court also cautioned that there exists "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

Here, Petitioner has not shown that counsel's failure to file a motion to suppress Petitioner's second interview statements based on the Sixth Amendment fell below an objective standard of reasonableness or that counsel's omission prejudiced his case.  Counsel acted reasonably because although he did not file a motion to suppress based on the Sixth Amendment, he did move to suppress Petitioner's statement on the basis that it was obtained in violation of *Miranda* and California state law.  (*See* Gov't's Lodg't No. 12 at 496-502.)  Moreover, as discussed above, counsel's failure to object based on the Sixth Amendment was not erroneous becuase the Court would not have suppressed Petitioner's second interview statements based on the Sixth Amendment.  Further, absent other evidence, this Court must indulge a strong presumption that Petitioner's counsel acted within the range of reasonable professional assistance, and that counsel's actions were based on tactical or strategic decisions.  *See Strickland,* 466 U.S. at 689.  Accordingly, this Court **FINDS** that Petitioner is not entitled to relief under an ineffective assistance of trial counsel claim.

## V.  Sixth Amendment Right to Effective Assistance of Appellate Counsel

In this federal Petition, Petitioner asserts a vague claim that his appellate counsel failed to "effectively review the record" and failed to raise and preserve all appealable issues.  (Pet'r's Pet. at 24.)  The Court **DENIES** Petitioner's orginal claim for ineffective assistance of appellate counsel because as the R&R correctly concludes, his claim is an unsupported conclusory allegation.  (*See* R&R at 15) (citing *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (conclusory allegations do not warrant habeas relief).)

Although Petitioner asserted a vague claim for ineffective assistance of appellate counsel in his original federal Petition, Petitioner provided a ground in support of his claim in his Objections to the R&R.  (*Compare* Pet'r's Pet. at 24 *with* Pet'r's Objs. at 8-10.)  After the R&R was issued, Plaintiff stated the following ground in support of his ineffective assistance

of appellate counsel claim, which he did not include in his federal Petition:  his appellate counsel failed to assert on appeal that "the trial court abused its discretion when it allowed the readback of transcripts and audio tapes of the defendant in the jury room without giving admonishments to cure any possible prejudice."  (Pet'r's Objs. at 8.)  However, this Court cannot consider this ground unless it grants Petitioner leave to amend his federal Petition and also grants a stay and abeyance so that Petitioner may exhaust this unexhausted claim in state court.  For the reasons set forth below, the Court **DENIES** Petitioner's request to amend his petition, and **DENIES** Petitioner's request for a stay and abeyance.

### A.  Legal Standard

As stated above, because Petitioner brings a ground in support of his ineffective assistance of appellate counsel claim for the first time in his Objections to the R&R, Petitioner must surmount two barriers before this Court may consider his newly detailed claim.  First, Petitioner must obtain leave from this Court to include the new claim in an amended federal Petition.  *See* Fed. R. Civ. P. 15(a).  To obtain leave to amend, Petitioner also must show that his new ground is within the statute of limitations because it either relates back to the original federal Petition, or it is saved by equitable tolling.  *See Mayle v. Felix,* 125 S.Ct. 2562, 2569-70 (2005).  Second, Petitioner must obtain a stay and abeyance from the Court so that he can go back to state court to exhaust his newly asserted claim.  *See Rhines v. Weber,* 544 U.S. 269, 275 (2005).  To obtain a stay and abeyance, Petitioner must make the following three showings ("Rhines factors"): (1) good cause as to why he did not exhaust the available state remedies for that ground; (2) his claim is potentially meritorious; and (3) he did not engage in intentionally dilatory tactics.  *See id.* at 277.

### B.  Application

#### 1.  Petitioner's Motion to Amend the Petition

Petitioner has requested leave to amend his federal habeas Petition in order to include the new ground for ineffective assistance of appellate counsel.  (*See* Pet'r's Mot. to Amend at 1.)  Although Petitioner only provides reasons why he could not amend his state petition and does not provide any argument as to why he could not timely amend his federal Petition, the

Court will construe Petitioner's arguments to also apply to his federal Petition.  *See United States v. Seesing,* 234 F.3d 456, 463 (9th Cir. 2000) ("Due to the liberal construction of *pro se* motions, the Court has an obligation to construe a *pro se* motion petition to the petitioner's advantage").

Petitioner states in his Motion to Amend that he intended to include the newly asserted ground in his original Petition to state court, but did not do so because cell searches and a lockdown caused "things [to] g[e]t mixed up." (*See id.* at 2.)  Petitioner also argues the delay was the result of him not being able to consult with his "jailhouse lawyer (who helped [him] do the Petition) to make sure everything was in place." (*See id.*)  Despite this confusion, Petitioner asserts that he submitted his Petition, out of "concern with mak[ing] the court's deadline so [Petitioner] wouldn't be time barred." (*Id.*)  Petitioner also makes a contradictory argument that he did not realize that the ground was not included in his Petition.  (*See id.*)  Petitioner contends that had he realized the absence of this argument, he "would not have mailed it off . . . knowing that [Petitioner] still had time to do so ([Petitioner's] time restraint had not yet run out)." (*Id.*)  For the reasons set forth below, the Court **DENIES** Petitioner's Motion to Amend.

Pursuant to Federal Rule of Civil Procedure 15(a), after a responsive pleading is served, a party may amend the party's pleading only by leave of court or by written consent of the adverse party.  *See* Fed. R. Civ. P. 15(a).  The Supreme Court held in *Forman v. Davis* that in deciding whether to grant a request to amend a federal Petition, courts should consider the following factors ("Forman factors"):  (1) prejudice to the opposing party; (2) undue delay; (3) bad faith or dilatory motive; (4) previous opportunities to amend; and (5) futility of amendment.  *See Forman v. Davis,* 371 U.S. 178, 182 (1962).  However, absent prejudice or a strong showing of any of the other *Forman* factors, there exists a strong presumption under Rule 15(a) in favor of granting leave to amend.  *See id.*

Of these five factors, prejudice to the opposing party is the consideration that carries the most weight.  *See Eminence Capital, L.L.C. v. Aspeon, Inc.,* 316 F.3d 1049, 1052 (9th Cir. 2003).  Examples of prejudice include amendments that would necessitate further discovery,

*see Acri v. Int'l Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398-99 (9th Cir. 1986); amendments that add new claims late in the adversarial process, *see United States v. Twin,* 806 F.2d 862, 876 (9th Cir. 1986); and amendments that add new allegations which change the basis of the action, *see M/V American Queen v. San Diego Marine Const. Corp.,* 708 F.2d 1483, 1492 (9th Cir. 1983).  Amendments that assert new theories are "not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri,* 781 F.2d at 1398.

### a.  Prejudice to the Opposing Party

Allowing Petitioner to amend the Petition would be prejudicial for two reasons.  First, it would add an entirely new ground in support of Petitioner's claim of ineffective assistance of appellate counsel late in the adversarial process.  *See Acri,* 781 F.2d at 1398.  Petitioner is asking for leave to add a new ground two years after his submission of the first state petition. (*See id.*)  It is notable that he did not present his new ground to this Court until after the Magistrate Judge filed an R&R recommending denial of Petitioner's ineffective assistance of appellate counsel for being vague and conclusory.  As the Ninth Circuit held in *Greenhow v. Sec'y of Health & Human Serv.,* 863 F.2d 633, 639 (9th Cir. 1988), allowing parties to litigate their cases fully before the magistrate, and then if unsuccessful, to change their strategy and present a different theory to district court would frustrate the purpose of the Magistrate Act.  Second, it would be prejudicial to allow additoin of a new ground to the Petition that Petitioner admits that he knew about when he first filed his Petition.  *See Acri,* 781 F.2d at 1398.  Petitioner states in his Motion to Amend:

> Petitioner has always attempted to set this forth in his original pleadings.  Because the claim of "ineffective assistance of appellate counsel," And #1 of the grounds to support this claim ("The trial court abused it's discretion when it allowed read back of transcripts and audio tapes of the defendant in the jury room without giving admonishments to cure any possible prejudice.) is what strengthen the original habeas petition.  And was the original cause for filing ineffective assistance of counsel claim.

(Pet'r's Mot. to Amend at 2.)   Accordingly, the Court **FINDS** the prejudice factor weighs against Petitioner.

### b. Undue Delay

The Government also has made a strong showing of undue delay.  (*See* Gov't's Opp'n at 3.)  Petitioner's argument that cell searches and a lockdown in prison made it difficult for him to organize and mail his Petition explains difficulties he had in reviewing his Petition immediately before filing.  However, his argument does not explain why he could not organize his Petition in the ten months he waited after the denial of his petition in California Supreme Court to file his Petition in federal court.  Moreover, Petitioner does not explain why he could not amend his Petition after its initial filing in federal court, but prior to issuance of the R&R recommending denial of his Petition.  (*See* Pet'r's Mot. to Amend at 2.)  As the Government notes, six months elapsed from the time Petitioner filed his federal Petition until the Government answered Petitioner's federal Petition.  (*See id.*)  Thus, Petitioner had six months in which he could have amended without leave from the Court.  *See* Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.")  In addition to those six months, Petitioner also had at least three opportunities to review his Petition for errors: (1) when he submitted his Petition to the California Supreme Court, (2) when he filed his Petition in this Court, and (3) when Petitioner submitted his Traverse in support of his federal Petition.  Furthermore, contrary to Petitioner's assertion, Petitioner did review his Petition because he added additional information, not relevant to this excluded claim, to his Traverse.  (*See* Pet'r's Trav. at 15.)  Therefore, despite the conditions in prison affecting the filing of his Petition, Petitioner had a number of opportunities to review his Petition for errors or omissions and to amend it accordingly.

Absent other evidence or explanation, Petitioner's arguments that cell searches and a lockdown caused the oversight is insufficient to overcome the *Forman* factor of undue delay.  Accordingly, the Court **FINDS** that the factor of undue delay weighs strongly against Petitioner.

*c.  Bad Faith or Dilatory Motive*

Although Petitioner's assertion of his new argument for ineffective assistance of counsel after issuance of the R&R recommending denial is suspect, it does not rise to the level of bad faith or a dilatory motive. (*See* Gov't's Opp'n at 3.)  Rather than bad faith, Petitioner's delay is due to his negligence.  Petitioner argues that his untimeliness was due to a "mix[] up" about what was included in his Petition and that he did not notice the omission until much later when he met with his jailhouse lawyer.  (Pet'r's Mot. to Amend at 2.)  Accordingly, the Court **FINDS** that the bad faith and dilatory motive does not weigh against Petitioner.

*d.  Previous Opportunities to Amend*

As previously stated, Petitioner had numerous opportunities to amend his Petition, but did not take advantage of those opportunities until after the R&R had been filed.  Accordingly, this Court **FINDS** that Petitioner had previous opportunities to amend his Petition.

*e.  Futility of Amendment*

As to the final *Forman* factor, the Government in its Opposition to Petitioner's Motion to Amend contends that the amendment would be futile because "Petitioner's claim is plainly meritless."  (*See* Gov't's Opp'n to Mot. to Amend at 3.)  While the Court previously found Petitioner's claim to be "potentially meritorious," this Court is partially persuaded by the Government's argument.  (*See* Order Setting Brief. Sched. at 9-10.)  On further review of the record, this Court has determined that while one of Petitioner's assertions is meritless, his second assertion is still potentially meritorious.

Petitioner asserts that his appellate counsel failed to raise the argument that "trial court abuse its discretion when it allowed the readback of transcripts and [video] tapes of the defendants in the jury room without giving admonishments to cure any possible prejudice from continued playback, replay, or verbal infliction." (Pet'r's Objs. at 8.)  This Court previously found that Petitioner's claim potentially had merit because the record shows that the trial judge did not take precautionary measures prior to commencing the readback of trial testimony requested by the jury.  (*See* Order Setting Brief. Sched. at 9-10) (citing *United States v.*

*Hernandez,* 27 F.3d 1403, 1408-09 (9th Cir. 1984) (holding that before a jury is permitted to reread or rehear testimony, certain precautions must be taken to avoid undue emphasis of particular testimony).) However, on further review, the record shows that the jury changed its mind, and that no readback of any trial testimony occurred. (*See* Gov't's Lodg't No. 12 at 1026-27.) Consequently, the trial judge did not need to take any precautionary measures regarding the readback. Thus, Petitioner's claim that his appellate counsel should have raised a claim regarding readback of trial testimony is meritless.

However, Petitioner's remaining contention that the jury should not have received the transcripts and videotapes of Petitioner's first and second police interviews without admonishment from the trial judge may have merit. (*See* Pet'r's Objs. at 8-9.) The Ninth Circuit has not established a "per se rule against replaying videotaped testimony" in the jury room. *United States v. Sacco,* 869 F.2d 499, 501 (9th Cir. 1989) Rather, the decision to allow playback of the testimony is to be exercised by the trial judge on a case-by case basis. *See id.* The trial judge's decision is reviewed for abuse of discretion by considering the circumstances surrounding the replay, including whether the videotapes were played in entirety, in the presence of counsel and Petitioner, or in open court. *See id.*

Here, the record shows that the jury did request and receive the video tapes and corresponding transcripts of Petitioner's first and second interviews during jury deliberations. (*See* Gov't's Lodg't No. 2 at 360.) However, the record does not indicate whether the trial judge admonished the jury or took any other precautionary measures to avoid undue emphasis of particular evidence, prior to giving the transcripts and videotapes of the interview to the jury during deliberations. *See Hernandez,* 27 F.3d at 1408-09 (holding that certain precautionary measures must be taken to avoid undue emphasis of particular testimony). The record also does not indicate the circumstances surrounding the replay of the tapes. Accordingly, this Court **FINDS** that Petitioner's claim of ineffective assistance of appellate counsel is potentially meritorious.

In summary, because the Government has made a strong showing of three out of the five *Forman* factors, including prejudice, undue delay, and opportunities to amend, his Court

1  **DENIES** Petitioner's Motion to Amend.[3]

2  <center>**2. Petitioner's Motion for a Stay and Abeyance**</center>

3  Even if Petitioner were allowed to amend his federal Petition, he also must obtain a stay

4  and abeyance of his Petition so that he can return to state court to exhaust remedies as to his

5  new ground in support of his claim of ineffective assistance of appellate counsel.  For the

6  reasons set forth below, this Court **DENIES** Petitioner's Motion for a Stay and Abeyance.

7  Because the AEDPA imposes a one-year statute of limitations within which a petitioner

8  must file a federal petition, *see* 28 U.S.C. § 2244(d), "petitioners who come to federal court

9  with 'mixed' petitions [of exhausted and unexhausted claims] run the risk of forever losing

10  their opportunity for any federal review of their exhausted claims." *Rhines v. Weber*, 544 U.S.

11  269, 275 (2005).  To prevent AEDPA's one-year statute of limitations from barring federal

12  review, a district court may "stay the petition and hold it in abeyance while the petitioner

13  returns to state court to exhaust his previously unexhausted claims." *Id.* at 275.  "Once the

14  petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner

15  to proceed in federal court." *Id.* at 276.

16  Recently, the United States Supreme Court declared that the stay and abeyance

17  procedure is available only in limited circumstances.  *See Rhines*, 544 U.S. at 277.  The

18  Supreme Court articulated three factors ("*Rhines* factors") that must be demonstrated in order

19  for a stay and abeyance to be proper.  *See id.*  Specifically, the Court must determine the

20  following before it may grant a stay and abeyance: (1) "there was good cause for [Petitioner's]

21  failure to exhaust his [claim] first in state court"; (2) Petitioner's unexhausted claim is

22  "potentially meritorious"; and (3) there is "no indication that [Petitioner] engaged in

23  intentionally dilatory litigation tactics." *Id.*

24  <center>*a.  Petitioner Does Not Show Good Cause*</center>

25  Petitioner states that he intended to include the factual support behind his claim of

---

27

28  [3] Because Petitioner has not made a showing sufficient to obtain leave to amend his Petition, the Court need not address if the new claim is within the statute of limitations.

<center>- 19 -</center>

ineffective assistance of appellate counsel in his state petition.  (*See* Pet'r's Mot. for Stay at 2.)  However, he claims he did not notice the absence of this support in the mailed Petition until he filed his Objections to the R&R because of the following reasons:  (1) his lack of education and resulting difficulty in navigating the legal system, (2) prison conditions, and (3) his inability to correspond with his jailhouse lawyer.  (*See id.* at 2-3.)  For the reasons stated below, this Court **FINDS** that Petitioner does not show good cause as to why he did not exhaust his new claim in state court.

The Supreme Court has held that "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines that there [is] good cause for the petitioner's failure to exhaust his claims first in state court."  *Rhines,* 544 U.S. at 277.  Although the Court in *Rhines* did not define what constitutes "good cause" sufficient to permit application of the stay and abeyance procedure, the Court of Appeals for the Ninth Circuit has held that a petitioner need not demonstrate "extraordinary circumstances" to show good cause.  *Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005).  Moreover, Justice Stevens, in a concurring opinion in *Rhines*, stated that the good cause requirement "is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary *pro se* prisoner.' "  *Rhines,* 544 U.S. at 279 (quoting *Rose v. Lundy*, 455 U.S. 509, 520 (1982)).  Finally, the United States District Court for the District of Nevada has stated:

> [T]he good cause standard . . . requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Riner v. Crawford*, 415 F.Supp. 2d 1207, 1211 (D. Nev. 2006).

Petitioner has not shown good cause as to why he could not exhaust his claim in state court.  Petitioner argues that he lacks the education to navigate the legal system, and as a result

did not notice the absence of this claim; however, his assertion is not supported by his prior conduct.  Petitioner has shown that he is able to review his Petition and include additional arguments because in his Traverse, he added new arguments (not relevant to this excluded claim) to support his Petition. (*See* Pet'r's Trav at 15.)  Petitioner also was not confused about the law or his claims because he admits that he knew about the ground in support of his ineffective assistance of counsel claim prior to filing his state petition. (*See* Pet'r's Mot. to Amend at 2.)

Petitioner also fails in arguing that cell searches and a lockdown caused him to not be able to include the ground in his petition.  As explained in the prior section, the prison conditions complained of do not explain why Petitioner did not take advantage of the numerous other opportunities he had to review and add the ground to his petition.

In addition, Petitioner's argument that his delay was caused by "jailhouse lawyers" is not sufficient to show good cause.  Although an error by legal counsel in filing a petition may constitute good cause, this rule only applies to legal counsel's actions.  Unfortunately, errors by other prisoners, even "jailhouse lawyers," do not fall within this good cause exception. *See Riner v. Crawford,* 415 F. Supp. 2d 1207, 1211 (D. Nev. 2006).  Accordingly, this Court **FINDS** that Petitioner has not shown good cause.

### b.  Petitioner's Claim is Potentially Meritorious

As discussed in the mirror section on leave to amend, this Court **FINDS** Petitioner's claim of ineffective assistance of appellate counsel is potentially meritorious.

### c.  Petitioner Engaged in Intentionally Dilatory Tactics

As discussed above, even though the timing of Petitioner's assertion of his new ground after filing of the R&R is suspect, there is no evidence that Petitioner intentionally engaged in dilatory tactics.  Rather, Petitioner was negligent in not reviewing his petition and including the ground in his state petition.  Accordingly, this Court **FINDS** that Petitioner did not engage in intentionally dilatory litigation tactics.

In light of this Court's finding that Petitioner has not met the good cause showing

1   required by *Rhines*, this Court **DENIES** Petitioner's Motion for a Stay and Abeyance.

2

3                                   *Conclusion*

4
        For the reasons set forth above, this Court (1) **ADOPTS** the R&R, (2) **DENIES**
5
   Petitioner's Petition for Writ of Habeas Corpus, (3) **DENIES** Petitioner's Motion to Amend,
6
   and (4) **DENIES** Petitioner's Motion for a Stay and Abeyance.
7

8

9       **IT IS SO ORDERED.**

10

11   DATED:  October 10, 2006              _____

12                                         HON. NAPOLEON A. JONES, JR.

13                                         United States District Judge

14

15   cc:  Magistrate Judge Anthony J. Battaglia

16          All Parties

17

18

19

20

21

22

23

24

25

26

27

28